IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

NEADER McWELL,                          §
                                        §
        Plaintiff,                      §
                                        §
v.                                      §       CIVIL ACTION NO. H-07-3487
                                        §
MICHAEL J. ASTRUE,                      §
COMMISSIONER OF THE SOCIAL              §
SECURITY ADMINISTRATION,                §
                                        §
        Defendant.                      §

**MEMORANDUM AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court[1] in this social security appeal is Plaintiff's Motion for Summary

Judgment (Document No. 16) and Defendant's cross Motion for Summary Judgment (Document

No. 15). Having considered the cross motions for summary judgment, the administrative record,

and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's

cross Motion for Summary Judgment be GRANTED, Plaintiff's Motion for Summary Judgment is

DENIED, and that the decision of the Commissioner of the Social Security Administration is

AFFIRMED.

I.      **Introduction**

        Plaintiff Neader McWell ("McWell") brings this action pursuant to Section 205(g) of the

Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final

---

[1] On January 16, 2008, pursuant to the parties' consent, this case was transferred by the
District Judge to the undersigned Magistrate Judge for all further proceedings. See Document No.
14.

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

her application for disability benefits. McWell argues that substantial evidence does not support

the Administrative Law Judge's ("ALJ") decision, and that the ALJ erred in her finding that

McWell had the residual functional capacity to perform a restricted range of light work.  The

Commissioner, in contrast, contends that there is substantial evidence in the record to support the

ALJ's findings and disability decision, that the decision comports with the applicable law, and that

it should therefore be affirmed.


## II.      Administrative Proceedings

McWell applied for Title II and Title XVI Social Security and Supplemental Security

Income disability benefits on December 7, 2005, claiming that she had been disabled since

November 1, 2005, due to fluid buildup around her heart, high blood pressure, knee pain, and

shortness of breath. (Tr. 62-64, 86). The Social Security Administration denied her application at

the initial and reconsideration stages. (Tr. 23-35). At the reconsideration level, McWell added that

she suffered from depression. (Tr. 30). After that, McWell requested a hearing before an ALJ.

The Social Security Administration granted her request and the ALJ, Helen Francine Strong, held

a hearing on June 6, 2007, at which McWell's claims were considered *de novo.* (Tr. 12-20). On

July 26, 2007, the ALJ issued her decision finding McWell not disabled. (*Id.).*

McWell sought review of the ALJ's adverse decision with the Appeals Council. (Tr. 7).

The Appeals Council will grant a request to review an ALJ's decision if any of the following

circumstances are present: (1) it appears that the ALJ abused her discretion; (2) the ALJ made an

error of law in reaching her conclusion; (3) substantial evidence does not support the ALJ's

actions, findings or conclusions; or (4) a broad policy issue may affect the public interest.  20

C.F.R. § 404.970; 20 C.F.R. § 416.1470.  After considering McWell's contentions in light of the

applicable regulations and evidence, the Appeals Council concluded, on September 6, 2007, that

there was no basis upon which to grant McWell's request for review.  (Tr. 4-6).  The ALJ's

findings and decision thus became final.  McWell has filed a timely appeal of the ALJ's decision.

42 U.S.C. § 405(g).  The parties have filed cross Motions for Summary Judgment.  (Document

Nos. 15 & 16).   This administrative appeal is now ripe for ruling.


**III.  Standard for Review of Agency Decision**

The court's review of a denial of disability benefits is limited "to determining (1) whether

substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's

decision comports with relevant legal standards."  *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir.

1999).  Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision:

"The findings of  the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive."   The Act specifically grants the district court the power to enter

judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of

the Commissioner of Social Security, with or without remanding the cause for a rehearing" when

not supported by substantial evidence.  42 U.S.C.§ 405(g).  While it is incumbent upon the court

to examine the record in its entirety to decide whether the decision is supportable,  *Simmons v.*

*Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the

record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner]

even if the evidence preponderates against the [Commissioner's] decision."  *Johnson v. Bowen*,

3

864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co., v. N.L.R.B.,* 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993).  The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.  Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability.  *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques.  *Id.*  § 423(d)(3).  The impairment must be so severe as to limit the claimant in the following manner:

he is not only unable to do his previous work but cannot, considering his age,

4

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "'incapable of engaging in any substantial gainful activity'." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience, and residual functional capacity, he will be found disabled.

20 C.F.R. §§ 404.1520, 416.910, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any

step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 564.

Here, the ALJ found at step five that McWell, despite her mental impairment and limitations, and considering her age, education, work experience and residual functional capacity, could perform a limited range of light work such as an office cleaner, garment sorter, and shipping and receiving weigher. (Tr. 19-20).  In this appeal, the Court must determine whether substantial evidence supports the ALJ's step five finding, and whether the ALJ used the correct legal standards in arriving at that conclusion.  According to McWell, substantial evidence does not support the ALJ's step five finding because there is no evidence to support the ALJ's physical residual functional capacity determination and that the only evidence regarding the claimant's physical functional capacity came from the claimant herself, which was contrary to the ALJ's finding that she could perform "light" work. In addition, McWell argues that under such circumstances, the Secretary will contact a treating source or obtain an examination or otherwise determine the functional capacity from a medical source in accordance with the requirements of 20 C.F.R. 404.1527 (c) (3).

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren,* 925 F.2d at 126.

**V.  Discussion**

### A.  Objective Medical Facts

The objective medical evidence shows that McWell suffers from hypertension, cardiomegaly, depression and a history of substance abuse.  There are, however, with the exception of McWell's hypertension, few medical records from McWell's treating physician, Dr. Edith Jones, M.D., which document the existence or severity of these conditions. As a result, the ALJ found that only McWell's depression and history of substance abuse rose to the level of severe impairments. While  McWell also complained of knee pain and foot swelling, medical evidence showed no significant limitations as a result of these impairments. (Tr. 116,198, 213, 217-18).

McWell stated that she was admitted to the hospital on November 1, 2005, where doctors discovered fluid buildup around her heart, and as a result, she has not been able to work since that time. (Tr. 63- 64). McWell stated that she was aware at the time of her admittance to the hospital that she suffered from high blood pressure, but was neither  being treated nor on any medication for high blood pressure. (Tr. 64).  There are no medical records to verify McWell's hospital visit. The records from McWell's treating physician reveal that McWell's blood pressure has, between 2001 and 2007, ranged from a high of 210/120, to a low of 120/80. (Tr. 164 (160/195); Tr.165 (130/90, 210/120); Tr. 166 (129/94, 127/94); Tr. 167 (130/90, 119/88); Tr. 168 (142/90, 120/80); Tr. 169 (140/88, 130/80); Tr. 170 (120/84))). McWell's hypertension is now treated with prescription medication, and she has not alleged any specific limitations related to her hypertension.

As for McWell's complaints of knee pain and foot swelling, the medical records from McWell's treating physician generally reveal that McWell complained of knee pain and swelling

and was prescribed medication for the swelling, but do not discuss or establish the severity of the condition. Dr. Jones noted one instance of pedal edema between 2004 and 2007, which resolved within one week. (Tr. 164-170).

In addition to the somewhat limited medical evidence in the medical records from McWell's treating physician, there is objective medical evidence in the administrative record from a consultative examination on February 6, 2006, by Dr. Alan E. Cororve, M.D. (Tr. 125-127). Dr. Cororve found that McWell had full range of motion, normal muscular strength, no ankle edema or varicosities, and walked with a normal gait. (Tr. 126). While McWell displayed poor ability to squat, rise, and heel walk, she showed fair ability to hop and toe walk, and good ability to tandem walk. (*Id.*). McWell also stated that her medications relieve her knee pain. (Tr. 104). In addition, a chest x-ray revealed a moderately enlarged heart with a left ventricular predominance, but Dr. Cororve noted an otherwise unremarkable cardiac examination and did not list any specific physical limitations . (Tr. 126-127).

The ALJ, in her written decisions, found that McWell's heart condition was not a severe impairment. McWell's main contention in this appeal is that there is no substantial evidence in the record to support the ALJ's finding as to her physical residual functional capacity and that the only evidence regarding McWell's functional capacity came from her own testimony, which was contrary to a finding of "light" functional capacity. However, the objective medical evidence clearly demonstrates that the ALJ did not base her determination solely on McWell's testimony and statements, as McWell alleges. The consultative examination performed by Dr. Cororve revealed a cardiac examination that was unremarkable, and while Dr. Cororve noted that McWell had some cardiac symptomology, he did not note any limitations on McWell's functional

capacity.(Tr. 126-127).  Even more, Mcwell's treating physician, Dr. Jones, reported in her April

2007 progress notes that McWell had a clear chest, normal heart, and no edema. (Tr. 164). As

well, there are no physical limitations specified in these progress notes. As a whole, the objective

medical evidence submitted to and considered by the ALJ does not support a conclusion that

McWell's knee pain and heart problems render her unable to engage in any gainful work activity.

In fact, the determination by the ALJ that McWell's heart condition is not a severe impairment is

both consistent with and supported by the medical evidence in the record. While McWell argues

that the only evidence regarding her functional capacity came from her own testimony, the ALJ

clearly regarded the lack of any specific physical limitations from both McWell's treating

physician and consultative examination in order to determine that McWell had no severe physical

impairments and thus could perform light work. Accordingly, the medical evidence in the record

supports the ALJ's decision.

On May 24, 2006, Dr. Don LaGrone evaluated McWell due to her complaints of

depression. (Tr. 138-142). McWell's sister accompanied McWell and told Dr. LaGrone that

McWell has suffered from depression on an intermittent basis but has never received treatment.

McWell has been extremely distraught since the death of her father. (Tr. 139-140).  According to

Dr. LaGrone's evaluation McWell displayed diminished psychomotor activity, her affect was flat

and her mood was sad and tearful. She described visual and auditory hallucinations, but stated

that she had not heard voices prior to her father's death.  McWell appeared to Dr. LaGrone to be

suicidal at times but did not actively state that she wanted to end her life. (*Id.*). She stated that she

had been forgetting everything and was unable to complete the concentration and attention

portion of the exam, does not care for herself, and takes no medication at this time. (*Id.*). Dr.

LaGrone diagnosed McWell with a dysthymic disorder, a past history of alcohol and polysubstance abuse, acute stress disorder and major depression. (*Id.*). Dr. LaGrone noted that McWell appeared to be acutely bereft and grieving the death of her father, and that a long-term outlook was difficult to assess at the time of the examination. (*Id.*).

There is no objective medical evidence from the records of Dr. Jones,  McWell's treating physician.  Instead, the only objective medical evidence comes from the psychiatric evaluation by Dr. LaGrone.

While the objective medical evidence shows that McWell suffers from depression and prior substance abuse, it does not show that any of these conditions is sufficiently severe or pervasive to preclude McWell from all kinds of gainful activity.[2] Thus, the objective medical evidence factor supports the ALJ's decision.

### B. Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981).  For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusional and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).  Indeed, "[a] treating physician's

---

[2] The record shows a brief note by Dr. Ravichandran that McWell suffers from "bipolar depression." (Tr. 163). Even the ALJ notes that McWell suffers from bipolar disorder. However, there is no objective medical evidence mentioning or supporting a diagnosis of bipolar disorder.

opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence.'" *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000)(quoting *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir. 1995)).  As such, if the treating physician's opinion is deficient in either respects, then it is not entitled to controlling weight.  The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists. *Id.*  "'[T]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez,* 64 F.3d at 176. (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  Further, regardless of the opinions and diagnoses of medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez,* 64 F.3d at 176.

There are four medical opinions in the record: (1) a physical residual functional capacity assessment completed by Dr. Eugenia Goodman on March 2, 2006, from her review of McWell's medical records (Tr. 129-136); (2) a mental residual functional capacity assessment and a psychiatric review technique completed by Dr. Leela Reddy on June 3, 2006 (Tr. 144-162); (3) a medical report dated August 28, 2006, by Dr. Guruswami K. Ravichandran (Tr. 163), and (4) the opinion offered by the testifying medical expert, Dr. George Lazar, at the hearing held on June 6, 2007. (Tr. 178-251).

Dr. Goodman, in the written Residual Functional Capacity Assessment she completed on March 2, 2006, opined, from her review of McWell's medical records through that date, that McWell could occasionally lift up to 20 pounds, could frequently lift up to 10 pounds, could sit and stand about 6 hours out of an 8 hour work-day, but had a poor ability to squat or rise. (Tr.

11

130-31). Dr. Goodman further wrote that McWell's allegations as to her subjective symptoms were not fully supported by evidence in the file. (Tr. 134).

Dr. Reddy, in the written Mental Residual Functional Capacity Assessment she completed on June 3, 2006, opined, from her review of McWell's medical records through that date, that McWell retains the "ability to understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to routine change." (Tr. 147). Further, in the written Psychiatric Review Technique, completed by Dr. Reddy on June 3, 2006, she opined that none of McWell's impairments,  either singly or in combination, met all the requirements of any presumptive disability listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, particularly Listings 12.04 and 12.09.  In order to be found presumptively disabled under Listing 12.04, a claimant must have an "affective disorder, characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." *See* Listing 12.04. In order to be found presumptively disabled under Listing 12.09, a claimant must have a "substance addiction disorders, characterized by behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." *See* Listing 12.09. While McWell satisfies the criteria for both 12.04 and 12.09, she must also satisfy the criteria in paragraphs "B" or "C," which describe "impairment-related functional limitations that are incompatible with the ability to do any gainful activity."*See* Listing 12.00A.  In order to satisfy paragraph "B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. *Id.*  A

12

marked limitation is defined as more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every four months, each lasting for at least 2 weeks. *Id.* Episodes of decompensation can be inferred from medical records showing significant alterations in medication, documentation of a need for hospitalization or placement in a halfway house, or any other relevant information in the record about the existence, severity or duration of the episode. *Id.* Here, Dr. Reddy found moderate restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. She further asserted no evidence to establish the "C" criteria. (Tr. 159-60).

Dr. Ravichandran, a physician of unknown connection to McWell, wrote a note dated August 28, 2006, in which he opined that McWell was "totally disabled" due to a bipolar disorder, depression, an anxiety disorder, a sleep disorder, and hypertensive heart disease. He further wrote that he expected the disability to remain permanently, and that McWell cannot work in any occupation permanently. (Tr. 163).

Dr. Lazar, in his testimony at the hearing held June 6, 2007, opined that McWell suffered from low-grade depression and was most likely experiencing a "lingering unresolved" response to the death of her father. (Tr. 234). Dr. Lazar further testified that neither impairment met any Listings under the "B" and "C" criteria. (Tr. 235). While the death of McWell's father likely induced a "very intense brief reaction," Dr. Lazar did not believe that McWell's impairment would affect her long-term functioning. (Tr. 234). When asked by the ALJ to give an opinion of McWell's limitations based on the medical records, Dr. Lazar found only mild restrictions of activities of daily living, mild to moderate difficulties in maintaining social functioning, mild to

13

moderate difficulties in maintaining concentration, and no repeated episodes of decompensation. Dr. Lazar found that McWell could work in a low stress environment, performing "simple repetitive tasks" with no more than occasional contact with the general public. Dr. Lazar further opined that McWell could not work a fast assembly line pace but could follow "simple one, two, three" instructions. (Tr. 235).  Ultimately, Dr. Lazar concluded that while McWell's impairments may be difficult to deal with, if treated with proper medication and counseling, such impairments would not preclude her from performing very simple work. (Tr. 240).

The ALJ, in her written decision, found that McWell had several severe impairments, including depression and a history of substance abuse. The ALJ further found that none of these impairments, either singly or in combination, met or equaled a Listing. Thus, the ALJ determined that McWell had a "residual functional capacity to perform a range of light work." (Tr. 16). That determination is wholly consistent with the expert opinions of both Dr. Reddy and Dr. Lazar. Both Dr. Lazar and Dr. Reddy opined that McWell's symptoms were temporary and could be improved or even resolved over time. (Tr. 161, 233). While Dr. LaGrone noted diminished pyschomotor activity, visual and auditory hallucinations beginning after the death of McWell's father, and her inability to complete the concentration, memory, and attention portions of the evaluation, he also noted that a long-term outlook was difficult to assess at that time. (Tr. 138- 141). Dr. LaGrone also noted that the death of McWell's father had occurred six weeks prior to his evaluation. As a result, Dr. LaGrone's diagnosis is consistent with the opinion of Dr. Lazar that "the loss of a very close person caused a very intense brief reaction." (Tr. 234). The ALJ's determination is not contrary to the diagnosis by Dr. LaGrone, and is wholly consistent with the opinions of both Dr. Reddy and Dr. Lazar. Thus, these expert opinions and diagnoses support the

14

ALJ's decision.

A review of the record and the ALJ's decision shows that while the ALJ gave Dr. Ravichandran's opinion little weight, her decision was well supported by the evidence in the record. In justifying her decision, the ALJ wrote:

> A treating physicia's medical opinion of the nature and severity of a claimant's impairments is given controlling weight if it is well supported by the evidence (20 CFR §§ 404.1527(d) and 416.927(d)). The undersigned has considered the medical opinions of all the treating and examining physicians. Dr. Ravichandran apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Dr. Ravichandran's opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence. Under Social Security Ruling 96-1p through 96-9p, the ultimate determination of disability is for the Commissioner to decide under the Regulations. Based on these factors, th undersigned gives Dr. Ravichandran's opinion little weight.

(Tr. 18).

There is no evidence documenting the relationship or treatment history between Dr. Ravichandran and McWell. In addition, Dr. Lazar found Dr. Ravichandran's opinion "without any objective supporting evidence" and as a result,  "totally not credible." (Tr. 233). Finally, because the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion, and because the evidence does in fact support the opinions of both Dr. Reddy and Dr. Lazar instead of Dr. Ravichandran, the ALJ properly evaluated the opinion of Dr. Ravichandran by giving it little weight. According, the expert medical opinion supports the ALJ's decision.

## C.  Subjective Evidence of Pain

The third element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends.  Not all pain is disabling, and the

fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook v. Heckler,* 750 F.2d 391, 395 (5th Cir. 1985). The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423(d)(5)(A). "Pain constitutes a disabling condition under the [SSA] only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 860 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983).

McWell argues in her Motion for Summary Judgment that the ALJ erred in her finding of physical residual functional capacity in part because McWell's testimony was contrary to a finding of light functional capacity. At the administrative hearing, McWell testified that she has no difficulty sitting, could lift and carry a ten pound bag of potatoes, occasionally lift and carry 20 pounds, lift her arms over her head, and use her hands to perform tasks such as buttoning a button. (Tr. 217, 219, 220-21). A range of light work involves lifting or carrying no more than 20 pounds, and can also include occupations that incorporate sitting throughout the day. (20 C.F.R.

416.967 (b)). In this respect, McWell's testimony is in fact consistent with a "light" functional capacity. Thus, the ALJ properly incorporated McWell's testimony, along with objective medical evidence, into her finding of McWell's physical residual functional capacity.

McWell testified at the administrative hearing that she has arthritis in her knees and is constantly in pain. (Tr. 213). She is depressed and does not want to get out of bed or take a bath. (Tr. 212). She normally gets up between 7:30 and 8:00 am and goes to bed between 10:00 and 10:30 pm. (Tr. 223). She testified that she can shower and bathe herself, comb and wash her hair, brush her teeth, dress herself, and prepare her own meals. (Tr. 224-225). She testified that she attends church every Sunday and sometimes has difficulty being around people. (Tr. 226-227). She hears voices. She forgets where she puts things two or three times a day. McWell abused drugs and alcohol, but has been clean and sober for thirteen years. (Tr. 197, 228-30).

The ALJ found that McWell's complaints and subjective symptoms were not entirely credible. In so doing, the ALJ wrote:

> After considering the evidence of record, the undersigned finds that the claimant's bipolar disorder and depression could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

> The Administrative Law Judge has taken into consideration the claimant's testimony and allegations of symptoms and limitations. The issue raised by the claimant's allegation is not the existence of limitations but rather the degree of limitations or other subjective symptoms which the claimant experiences. The objective clinical findings (although not the only factor to be considered) do not support the degree of functional limitations which the claimant alleges.

> While the claimant testified that she suffered from significant limitations, she did not testify to taking an inordinate amount of medication. She has not sought emergency room care on a frequent basis and has not been hospitalized for any duration for any condition since she alleged she became disabled. The claimant has not received the type of medical treatment one would expect for a totally disabled individual.

Dr. LaGrone indicated that the claimant had not sought treatment for her depression and that she was not taking any medication. (Exhibit 3F). This reasonably leads one to believe that the claimant's symptoms were not as disabling as alleged.

As mentioned earlier, the claimant testified to work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported.

The evidence also reveals that the claimant was laid off from her job. (Exhibit 3F). A reasonable inference, is that the claimant's impairment would not prevent the performance of that job, since it was being performed at the time of the layoff.

The undersigned concedes that the claimant's problems may be expected to produce mild symptoms. However, the medical records do not show repeated hospitalization or aggressive forms of therapy (such as surgery or treatment at a pain clinic) that would be expected if he experienced severe, persistent and unremitting symptoms. Thus, the undersigned finds the claimant's testimony to be unsupported by the objective findings and not credible to the extent alleged.

(Tr. 18-19).  Credibility determinations, such as that made by the ALJ in this case, are generally within the province of the ALJ to make.  *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert. denied*, 514 U.S. 1120 (1995).

Because the record shows that the ALJ made and supported her credibility determination, and because the ALJ did not rely on any inappropriate factors in making her credibility determination, this factor also weighs in favor of the ALJ's decision.

**D.  Education, Work History and Age**

The fourth element considered is the claimant's educational background, work history and present age.  A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot,

18

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(a).

The record shows that McWell was fifty-one years old at the date of the hearing before

the ALJ, had a twelfth grade education, and had past work experience in child care and home

health provider. (Tr. 195-96). Based on the ALJ's conclusion that McWell had the residual

functional capacity to perform a limited range of light work with occasional contact with the

general public, doing 1, 2, and 3 step repetitive tasks that do not involve fast or assembly line

pace work or complex or abstract instructions, the ALJ questioned a vocational expert to

determine whether McWell could perform any of her past work, and if not, whether she could

perform any other work that exists in significant numbers in the national economy. The following

hypothetical was posed to the vocational expert:

> Q:  This hypothetical person can lift and/or carry 20 pounds occasionally and 10
> pounds frequently, and can stand and/or walk with normal breaks for a total
> of about six hours in an[d] eight-hour workday. This person can sit with
> normal break for a total of about six hours in an eight-hour workday and can
> occasionally balance, climb, crawl, crouch, kneel, and stoop throughout the
> course of the workday. This person is able to do some pushing and pulling of
> arms and legs within the stated exertional limitations. There are no established
> manipulative visual communicative or environmental limitations. As far as
> psychologically based or mental limitations are concerned, this person has the
> following limitations and when I talk in terms of moderate, I mean seriously
> limited, but not precluded. This person would have mild to moderate
> restrictions in activities of daily living, mild to moderate restrictions in terms
> of social functioning, and mild to moderate restrictions in terms of
> concentration, persistence, or pace. This person would also be limited to the
> following simple one, two, three repetitive tasks only in a low stress
> environment. And by that, I mean minimal changes in workplace setting and
> no more than occasional contact with the general public. This person should
> not have any work at a fast or assembly line pace and once again, there should
> be no complex instructions or nothing aside from one, two, or three step
> instruction, not being abstract. So, given these limitations, could such a person
> perform any of the past relevant work that the claimant performed either as
> she actually performed it or as it's customarily performed in the national

economy?

A:      When she was performing the home healthcare at a light level, I would say that fit into that. That would be less stressful than childcare because dealing with several–

Q:      I see.

A:      –infants at a time and dealing with one person.

Q:      I see. Now let me ask you this, are there jobs in the national and regional economy that such a person could perform? Do you have examples and numbers?

A:      Yes. A person with that hypothetical could work as an office cleaner. These will all be light, unskilled at 2. Over 3,000 in the region, over 500,000 nationally. There are shipping and receiving weighers, which are light, unskilled at 2. Over 600, and over 100,000. There are garment sorters. Light, unskilled at 2. Over 1,500, over 200,000. Those are all examples of jobs that would fall within that hypothetical.

Q:      Thank you very much. Now let me get clarity on this–on next point. Is the person–the hypothetical person with the same age, education, and background as the claimant, would that individual grid out at the sedentary level?

A:      At age 50.

Q:      At age 50?

A:      At age 50, not before. At age 50.

Q:      Okay. So let me give you a second hypothetical and that would that due to a combination of medical problems as well as medication required for such medical problems and the resulting fatigue, that individual is unable to sustain sufficient concentration, persistence, and pace to do even simple repetitive tasks on a regular and consistent basis, and by that I mean eight hours a day, five days a week, and forty hours a week. Given these limitations, could such a person perform the claimant's past work?

A:      No, your honor.

Q:      Would there be any jobs that this person could do?

A:      No.

20

(Tr. 243-45).

Because there is substantial evidence in the record to support the ALJ's conclusion that McWell can perform a limited range of light work with occasional contact with the general public, doing 1, 2, and 3 step repetitive tasks that do not involve fast or assembly line pace work or complex or abstract instructions, and because the vocational expert testified that McWell could, within the limited range of light work identified by the ALJ, perform work as an office cleaner, a shipping and receiving weigher, and a garment sorter, this factor also supports the ALJ's decision.

### VI. Conclusion and Order

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts. *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982). As all the relevant factors weigh in support of the ALJ's decision, and as the ALJ properly considered the expert medical opinions in the record and properly relied upon and applied the medical vocational guidelines, the ALJ's decision was supported by substantial evidence and comports with applicable law. Therefore, the Court

ORDERS that Defendant's cross Motion for Summary Judgment (Document No. 8) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 9) is DENIED, and the Commissioner's decision is AFFIRMED.

Signed at Houston, Texas, this 2nd day of July, 2008.

Frances H. Stacy
United States Magistrate Judge

21